IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN BARNES,** | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] CV-05-BE-2379-S |
| | ] |
| **MICHAEL J. ASTRUE,** | ] |
| **COMMISSIONER OF SOCIAL** | ] |
| **SECURITY ADMINISTRATION,** | ] |
| | ] |
| Defendant. | ] |
| | ] |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This case is before the court on a motion for summary judgment (doc. # 18) filed by defendant Commissioner of Social Security Michael J. Astrue.[1] After briefing by both sides, the court held a hearing on April 18, 2007. For the reasons stated on the Record and summarized below, the court finds that the defendant's motion for summary judgment is due to be GRANTED in its entirety. Furthermore, the defendant's motion to strike (doc. # 38) is due to be DENIED as moot because the court did not consider any of the challenged exhibits in ruling on the motion for summary judgment.

In his complaint, plaintiff John Barnes, an African-American male, alleges a violation of The Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, ("Title VII"); retaliation in violation of Title VII; and age discrimination in violation of the Age Discrimination in

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25(d)(1), Michael J. Astrue was substituted for Jo Anne B. Barnhart as the defendant in this lawsuit.

1

Employment Act of 1967, 29 U.S.C. § 621 et seq.² The court has jurisdiction of this case under 28 U.S.C. § 1331 pursuant to its federal question jurisdiction.

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and when the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The parties' disagreement on each and every fact is not significant; the law requires only that "there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also Celotex v. Catrett,* 477 U.S. 317, 327 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 251-52.

Mere speculation is insufficient to create an issue of fact and defeat a properly-supported motion for summary judgment. *See Ramsey v. Leath*, 706 F.2d 1166, 1169-70 (11th Cir. 1983). Furthermore, the plaintiff's self-serving statements do not create a genuine issue of material fact. *See Smith v. Fed. Express Corp.,* 191 Fed. App'x 852, 855 (11th Cir.2006) (explaining that summary judgment is appropriate where there is no evidence to support plaintiff's allegations other than his own self-serving statements); *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir.2005) ("For factual issues to be considered genuine, they must have a real basis in the record[;] ... [M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").

---

²At oral argument, plaintiff's counsel advised the court that he was withdrawing his allegation of age discrimination. Consequently, this Memorandum Opinion does not address the age discrimination claim.

## II. DISCUSSION[3]

**A. Title VII Involuntary Reassignment Claim**

**1. The *Prima Facie* Case**

Barnes challenges his February 21, 2003 involuntary reassignment from his position as district manager of the Social Security Office in Selma, Alabama, a position that he held for seventeen years. In his new position as a project manager at the Southeastern Program Service Center in Birmingham, plaintiff retained the same pay and grade level but was divested of all supervisory duties.

Barnes' February 21, 2003 reassignment stems from a January 2003 Personnel Management Evaluation (PME)[4] that was conducted on the Selma District Office by a four member team of evaluators from Social Security Administration's Human Resources Department.[5] The 2003 PME was initiated in response to an anonymous letter sent to Regional Commissioner Paul Barnes outlining what the writer considered to be serious problems at the Selma District Office.

The letter specifically indicated that the office was divided along racial lines and that Joe

---

[3]Based on the lengthy and through presentation of the facts in the parties' briefs and at oral argument, the court does not include a complete recitation of the facts in this Memorandum Opinion. These facts, however, are presented in the light most favorable to plaintiff.

[4]The PME Review process is used by the Agency's Human Resources Department to evaluate the whole gamut of personnel issues in an individual office. Typically, as part of the PME process, a team of evaluators is appointed, questionnaires are sent to the employees in the office being evaluated, and the evaluators then personally meet with the office staff on site to gather additional feedback regarding office functioning, the performance of the District Manager and Assistant District Manager, and general office morale.

[5]Jan Foushee, Director of the Agency's Human Resources Center in Atlanta, selected four employees from around the region to conduct the 2003 PME on the Selma District Office.

Newton, the Caucasian assistant district manager, constantly undermined the plaintiff's authority to make work assignments, establish office policy, and significantly contributed to the poor office morale.  The letter also alleged that State of Alabama Area District Manager Charles Wofford acquiesced in Newton's attempts to undermine Barnes' authority.  The letter did not criticize the plaintiff or any of his management decisions.

The examination and observations of the PME evaluation panel were broader than the concerns contained in the anonymous letter.  The panel specifically found that the Selma District Office was plagued by substantive and chronic issues that had been ongoing for ten or more years.  Furthermore, the panel noted that plaintiff and Newton were unable to relate and communicate with each other; to cohesively communicate with non-management staff; to create a work environment that fostered a sense of fair play and equal opportunity; and to establish reasonably efficient work processes and procedures.  Ultimately, the panel recommended that plaintiff and Newton be reassigned from the Selma District Office.  Regional Commissioner Barnes adopted the findings of the PME review panel, and the plaintiff was subsequently reassigned to the Southeastern Program Service Center in Birmingham, Alabama.  Barnes filed this lawsuit on November 18, 2005.

To establish a prima facie case of disparate treatment, a plaintiff must present "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion...." *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312, (1996) (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 (1977)).

One of the ways that Barnes can create an inference of discrimination is to demonstrate

that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) he was qualified for the job or job benefit at issue. *Rice-Lamar v. City of Ft. Lauderdale,* 232 F.3d 836, 842-43 (11th Cir.2000) (*citing Holifield v. Reno,* 115 F.3d 1555, 1561-62 (11th Cir. 1997)). At issue in this case is the plaintiff's ability to identify a similarly-situated comparator.

Evidence that similarly situated employees are disciplined more leniently raises the inference of discrimination. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1186 (11th Cir.1984). The jurisprudence of this circuit establishes that to be "similarly situated," the comparator must have been involved in or accused of the "same or similar" misconduct, *Holifield,* 115 F.3d at 1562, and operated under the same workplace rules or policies, *see Lathem v. Department of Children & Youth Services,* 172 F.3d 786, 793 (11th Cir. 1999).

Furthermore, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct from their comparator's. *See Malladi v. Brown*, 987 F. Supp. 893, 909 (M.D. Ala. 1997).

Applying the standards referenced above, the court concludes that none of the persons identified in the plaintiff's brief is an appropriate comparator. The record indicates that a PME was conducted on the Tucker, Georgia District Office on Manager Gary Epling in August 2002, approximately two months before the PME at issue in this case. The record does not contain any information about circumstances that led to the PME review or about the identity of the PME

review panel. More importantly for purposes of evaluating the similarity between the plaintiff and Epling, the managerial deficiencies noted in Epling's PME were of a different nature and quality than plaintiff's. For example, the PME evaluation team in Epling's review did not document a history of persistent, chronic problems like dissension between managerial employees, low office morale, arbitrariness or fear of managerial reprisal, issues that the PME in Barnes' review found plagued the Selma District Office.

The court makes similar observations about the plaintiff's ability to utilize Gary Hodo, the manager of the Jackson, Mississippi Field Office, as a comparator. A PME was conducted on Hodo's field office in August 2005, approximately two years after the PME at issue in this case. The written summary of Hodo's review panel indicates that the PME was not initiated at the request of Regional Commissioner Barnes, but initiated by the Mississippi Area Director and the Jackson, Mississippi Field Office District Manager. Furthermore, although the managerial deficiencies noted in Hodo's PME included allegations of poor office morale, fear of reprisal, and sexual harassment by some members of management, the PME evaluation team did not document a history of persistent, chronic problems like dissension between managerial employees and allegations of arbitrariness and fear of managerial reprisal that underscored the findings of the 2003 PME evaluation of the Selma District Office.

Lastly, a juror could not reasonably conclude that Ralph Crim is an appropriate comparator. Barnes initiated a PME of Crim in March 2006, approximately three years after the PME at issue in this case. The evaluation found that Crim behaved unprofessionally and with hostility to agency employees and indicated that Crim's subordinates often feared reprisal. However, nothing in Crim's evaluation indicated that the above-referenced deficiencies were as

chronic, persistent, and prolonged as the deficiencies that plagued the Selma District Office.

In summary, the court concludes that plaintiff Barnes has not created a genuine issue of fact on the similarly-situated prong of the analytical paradigm because nothing in the record indicates that he and the putative comparators identified in his brief engaged in the same or similar misconduct or were evaluated by the same PME evaluation review panel.

**2. Pretext**

Assuming *arguendo* that the plaintiff had established a *prima facie* case of discrimination, the court nevertheless finds no evidence that the agency's non-discriminatory reason for the plaintiff's reassignment was a pretext for racial discrimination.

In its motion for summary judgment, the defendant contends that Regional Commissioner Barnes made the decision to reassign the plaintiff because of the adverse findings of the 2003 PME. The court finds this reason to be a legitimate, nondiscriminatory one. *See Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (indicating that the defendant's burden of rebuttal is exceeding light at this stage of the inquiry, as the burden is merely one of production, not proof).

Having determined that the defendant satisfied his burden of producing a legitimate, non-discriminatory reason for the adverse employment decision, the court next considers the issue of pretext. The court's analysis of the pretext issue is guided by the following quote from the Eleventh Circuit that succinctly expresses the rationale of the pretext inquiry:

> Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers. . . *our inquiry is limited to whether the employer gave an honest explanation of its behavior.*

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (citing *Mechnig v. Sears, Roebuck, & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)) (emphasis added).  Consistent with the above-referenced rationale, to create a jury question on the issue of pretext, a plaintiff must point to sufficient evidence that allows a fact finder to reasonably conclude, at a minimum, that the proffered reasons were not actually the motivation for the termination.  *See Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

A plaintiff can typically create evidence of pretext by demonstrating that the legitimate nondiscriminatory reasons should not be believed or by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996).  *See also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.")

In attempting to show that race was the more likely reason for his involuntary reassignment, Plaintiff argues that the racially discriminatory animus of Area Director Charles Wofford[6] influenced Regional Commissioner Barnes, the members of the Regional Commissioner's executive staff, and the PME evaluation team.  In short, plaintiff argues a "cat's paw" theory of liability.  In a "cat's paw" situation, the person bearing discriminatory animus is

---

[6] Plaintiff contends that his authority as District Manager of the Selma Office was consistently undermined by Wofford and that most of the problems identified in the 2003 PME were the result of Wofford's history of discriminatory animus against him.

8

the true decision maker, and "the titular 'decision maker' is a mere conduit for . . . discriminatory animus." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331-32 (11th Cir. 1999). *Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir. 1998). Read collectively, these cases establish that a plaintiff may proceed on a cat's paw theory where he or she can show that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee.

Even assuming that Wofford harbored a racially discriminatory animus against Barnes, the record contains no evidence, nor can the court make any reasonable inferences from the evidence contained in the record, that Wofford's discriminatory animus contributed to the decision to remove plaintiff from the Selma office. In an attempt to argue that Wofford was the "cat's paw" in the ultimate decision to reassign the plaintiff from the Selma District Office, Barnes argues that Commissioner Barnes was not the sole decisionmaker. According to the plaintiff's interpretation of the evidence, Wofford was a joint decisionmaker who impermissibly tainted the ultimate decision of Regional Commissioner Barnes to reassign Plaintiff Barnes with a discriminatory animus.

The plaintiff's theory of liability is based on an unreasonable interpretation of Regional Commissioner Barnes' testimony – specifically, his December 15, 2003 affidavit taken in conjunction with the EEO proceedings. In his December 15, 2003, affidavit, Regional Commissioner Barnes referred to a meeting attended by Wofford and other members of the Regional Executive Staff[7] where they all "agreed that reassignment was appropriate."[8] The court

---

[7]Ron Tysinger and Leon Rhodes.

[8]*See* Pl's Ex. 1, p. 3, 4.

9

finds this statement ambiguous at best, as it does not suggest the identity of a decisionmaker or the existence of a joint decisionmaking process.

However, any ambiguity created by the Regional Commissioner's affidavit and any argument that Wofford was a joint decisionmaker in the process is dispelled by the Regional Commissioner's undisputed deposition testimony that, although he had several meetings about the recommendation of the PME review panel with Wofford and the members of his executive staff, he made the ultimate decision to involuntarily reassign the plaintiff.[9]  Additional evidence of the Regional Commissioner's unilateral authority to ultimately make the decision to reassign the plaintiff is his undisputed testimony that he was conflicted about whether to implement a punishment *more* severe than the recommendation of the voluntary reassignment made by the PME review panel.

In short, the record contains no evidence that the members of the Regional Commissioner's executive committee[10] or the PME review panel had any racially discriminatory animus against the plaintiff or that Wofford imputed any racially discriminatory animus to Barnes.  Instead, all *reasonable* inferences from the record in this case clearly reveal that Regional Commissioner Barnes independently made the decision to adopt the recommendations of the PME review panel and was not influenced by Wofford's input or observations.  The Eleventh Circuit holds that "[w]here a decisionmaker conducts his own evaluation and makes an independent decision, his decision is free of the taint of a biased subordinate employee." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1270 (11th Cir. 2001); *Wright v. Southland*

---

[9]*See* Paul Barnes Dep., p. 13; 37.

[10]Ron Tysinger, Leon Rhodes, or Jan Fouchee.

*Corp.*, 187 F.3d 1287, 1304 n. 20 (11th Cir. 1999).  *See also, Curtis v. Teletech Customer Care Mgmt.*, 208 F. Supp.2d 1231, 1243 (N.D. Ala. 2002) (holding that fact that supervisor takes an employment action based upon a recommendation or information provided to him by others does not, standing alone, imply that supervisor may be viewed being the "cat's paw" of a disgruntled employee).

Lastly, plaintiff attempts to establish pretext by attacking Regional Commissioner Barnes' ultimate decision to adopt the recommendation of the PME review panel and reassign plaintiff from the Selma District Office.  Plaintiff argues that Barnes should have considered the office's outstanding record of performance and should have given plaintiff the opportunity to be informed of and respond to the adverse findings contained in the PME evaluation report.

Regardless of whether Regional Commissioner Barnes' decision was flawed or whether he should have considered the Selma District office's stellar record of performance as a factor mitigating the plaintiff's reassignment, courts do not sit as "super personnel boards" to pass on the wisdom of employers' decisions but must merely search for evidence of discrimination.  *See Brown v. American Honda Motor Co.,* 939 F.2d 946, 951 (11th Cir. 1991)  ("the court's responsibility was not to second guess the wisdom of [defendant's] reasoning, but to determine if the reasons given were merely a cover for discriminatory intent"); *Tarrance v. Montgomery Bd. of Educ.,* 157 F. Supp. 2d 1261, 1263 (M. D. Ala. 2001) ("Employers have the freedom to make unwise, unsound, or even irrational decisions, and courts do not sit as super-personnel boards").

Simply put, the plaintiff presents no evidence from which a reasonable juror could conclude that his race, as opposed to the adverse findings of the PME review panel, more likely motivated the decision to remove him as the district manager of the Selma Regional Office.

Furthermore, the plaintiff's self-serving statements about Wofford's alleged discriminatory animus or his influence on the challenged employment decision – without more – do not create a genuine issue of material fact on the issue of pretext. *See Smith v. Fed. Express Corp.,* 191 Fed. App'x 852, 855 (11th Cir.2006) (explaining that summary judgment is appropriate where no evidence supports plaintiff's allegations other than his own self-serving statements); *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir.2005) ("For factual issues to be considered genuine, they must have a real basis in the record[;] ... [M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").

Based on the foregoing, the court concludes that the defendant's motion for summary judgment is due to be GRANTED on the Title VII involuntary reassignment claim.

**B. Retaliation Claim**

After his reassignment from the Selma District Office, Barnes alleges that he was subjected to retaliation. Plaintiff specifically alleges that he was denied a performance award for the 2002 fiscal year;[11] denied travel expenses[12] and meaningful job duties during his temporary reassignment to the Montgomery, Alabama Social Security office; and prevented from performing any supervisory duties in his permanent reassignment in Birmingham, Alabama.

---

[11]Performance awards in the maximum amount of $900 are typically given for performance in the fiscal year immediately preceding the fiscal year in which the award is issued. Awards for 2002 fiscal year would have been given at the end of fiscal year 2003, after the 2003 PME report, and after Plaintiff was reassigned to the Program Service Center. Defendant alleges that plaintiff did not receive an award in 2003 for the fiscal year 2002 as a result of the adverse findings of the PME review team.

[12]The testimony relating to travel expenses indicates that, assuming an employee is entitled to receive travel expenses, the employee requesting the reimbursement of travel expenses must submit a voucher. Barnes testified that he did not submit a voucher because neither Wofford nor Best, the District Manager in the Montgomery Office, informed him that he could submit a travel voucher and be reimbursed for his mileage and expenses in commuting to work in Montgomery.

To establish a *prima facie* case of retaliation, Barnes must establish that (1) he engaged in a statutorily protected expression; (2) he was subjected to an adverse employment action; and (3) demonstrate a causal link between the adverse employment action and the protected activity. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). At issue in this case is whether plaintiff can establish the existence of an adverse employment action or demonstrate a causal link between the adverse employment action and the protected activity. The plaintiff's claim is not a model of clarity. However, Barnes appears to argue that he was retaliated against for his March 21, 2003 EEO complaint challenging his involuntary reassignment from the Selma District Office.

The court does not find that the plaintiff's failure to receive a one-time cash award, failure to be reimbursed for temporary travel expenses, or his failure to have any meaningful work duties during his temporary reassignment rises to the level of an adverse employment action. An adverse employment action may consist of conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000). Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality" and must be assessed on a case-by-case basis, under both a subjective and an objective standard. *Id.* At least one district court in this Circuit holds that one-time inequity, without more, falls far short of an adverse employment action. *See Rutledge v. SunTrust Bank*, 2007 WL 604996 (M. D. Fla. February 22, 2007). *See also*, *Stavropoulos v. Firestone*, 361 F.3d 610, 617-18 (11th Cir. 2004) (holding that because the acts that plaintiff complained of had no net effect on her employment status, the acts

were not objectively serious and tangible to constitute adverse employment actions).

Applying the standards referenced above, plaintiff's failure to be reimbursed for temporary travel expenses, or his failure to have any meaningful work duties during his temporary reassignment were one-time occurrences that were temporary and thus, were not objectively serious and tangible to constitute adverse employment actions.

However, the court finds that Barnes' involuntary reassignment to a Project Manager position in Birmingham, a position that stripped him of his supervisory duties, is the type of adverse employment action that adversely affected his status as an employee although he experienced no corresponding salary decrease. *See Gupta,* 212 F.3d at 587. Despite the court's conclusion that plaintiff's involuntary reassignment and resulting loss of supervisory responsibilities is an adverse employment action, the court nevertheless finds that he has not alleged a *prima facie* case of retaliation because he does not demonstrate a causal connection between an adverse employment action that occurred *after* he engaged in statutorily protected activity.

"The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001) (internal quotation omitted). To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct and that the protected activity and the adverse act were at least somewhat related and in close temporal proximity. *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004).

Plaintiff was given notice of his reassignment from the Selma District office on March

14

14, 2003 and filed his EEO complaint challenging his involuntary removal from the Selma District Office on March 21, 2003.  Regional Commissioner Barnes' undisputed testimony was that the plaintiff's reassignment and the corresponding loss of supervisory duties was the result of Commissioner Barnes' reaction to the 2003 PME evaluation on the Selma District Office. Consequently, the adverse employment action (i.e., the involuntary reassignment) occurred *before* the statutorily protected expression at issue (i.e., the March 21, 2003 EEO complaint regarding the involuntary reassignment) although plaintiff did not experience all of the repercussions of his reassignment in the form of the divestment of his supervisory duties until *after* he began working in Birmingham, Alabama service center.  Because the adverse employment action that resulted in the loss of supervisory duties was made *prior* to the statutorily protected expression, plaintiff cannot create a jury question on the issue of causation.

Based on the foregoing, the court concludes that the defendant's motion to dismiss is due to be GRANTED on the retaliation claim.

DONE and ORDERED this 2nd day of May, 2007.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

.

.